Kelly ALEXANDER, an individual,
Donald Porter, an individual,
Plaintiffs,

v.

Hussam KUJOK, an individual; Hussam Kujok, M.D., Inc.; Mark Debruin, an individual; Debruin Medical Center, A.P.C.; Gilbert Martinez, an individual; Family Medicine and Ambulatory Care Centers, Inc.; Dheeraj Kamra, an individual; Capitol Internal Medicine Associates; Thomas A. Del Zotto, an individual; Robert W. Larsen, an individual; and Does 1 through 10 inclusive, Defendants.

No. 2:15–cv–00477–MCE–CKD

United States District Court,
E.D. California.

Signed January 20, 2016

Filed January 21, 2016

Patricia Kramer, Brianna Marie Neasham, Neashan & Kramer, LLP, Folsom, CA, for Plaintiffs.

Thomas M. Garberson, Brian D. Johnson, Low McKinley Baleria & Salenko, LLP, Theodore Derk Poppinga, Schuering Zimmerman & Doyle, LLP, Dominique Ann Pollara, Pollara Law Group, Sacramento, CA, Joseph S. Picchi, Galloway, Lucchese, Everson & Picchi, Pleasant Hill, CA, Aaron T. Schultz, Galloway, Lucchese, Everson & Picchi, Walnut Creek, CA, Stephanie Rae Hanning, Schmid & Voiles, Los Angeles, CA, Mark R. Gibson, Bradley Curley Asiano Barrabee and Gale, P.C., Larkspur, CA, Michele Raley, Schmid & Voiles, Palo Alto, CA, for Defendants.

## MEMORANDUM AND ORDER

MORRISON C. ENGLAND, JR., CHIEF JUDGE, UNITED STATES DISTRICT COURT

Through this lawsuit, Plaintiffs Kelly Alexander and Donald Porter ("Plaintiffs" unless otherwise noted) seek damages and injunctive relief under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"). The jurisdiction of this court is premised on federal question jurisdiction in accordance with 28 U.S.C. § 1331. In addition to their federal claims under the ADA, Plaintiffs also assert pendant state law claims under 1) California's Unruh Civil Rights Act, California Civil Code § 51, et seq.; 2) California's Disabled Persons Act, California Civil Code § 54, et seq.; 3) California's Bane Act, California Civil Code § 52.1; and 4) common law negligence claims. Finally, Plaintiffs also assert a cause of action for violation of the Rehabilitation Act, 29 U.S.C. § 794. Presently before the Court are motions to dismiss brought by all six doctors/medical entities being sued as Defendants: 1) Hussam Kujok M.D. and his medical practice, Hussam Kujok, M.D., Inc. (collectively "Dr. Kujok"); 2) Mark Debruin and his medical practice, Debruin Medical Center A.P.C. ("Dr. Debruin"); 3) Gilbert Martinez and his practice, Family Medicine and Ambulatory Care Centers, Inc. ("Dr. Martinez"); 4) Dheeraj Kamra and his practice, Capitol Internal Medicine Associates ("Dr. Kamra"); 5) Thomas A. Del Zotto ("Dr. Del Zotto"); and 6) Robert W. Larsen ("Dr. Larsen").

All six doctors argue that Plaintiffs lack standing to pursue ADA claims because they have no intent to return for further treatment, and that absent such intent subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)[1] is lacking. Alternatively, Defendant physicians argue that Plaintiffs' claims fail to state a viable claim against them in any event, and that dismissal under Rule 12(b)(6) is therefore appropriate. Finally, Dr. Larsen argues that Plaintiffs' prayer for punitive damages should be stricken inasmuch as no such damages are authorized by any of the claims asserted by Plaintiffs in this lawsuit.

For the reasons set forth below, Defendants' Motions to Dismiss are GRANTED in part and DENIED in part.[2] Dr. Larsen's Motion to Strike the punitive damage allegations is DENIED.

## BACKGROUND [3]

Plaintiffs, who are both profoundly deaf, use American Sign Language ("ASL") as

---

[1]. All further references to "Rule" or "Rules" are to the Federal Code of Civil Procedure unless otherwise noted.

[2]. Having determined that oral argument was not of material assistance, the Court ordered this Motion submitted on the briefing in accordance with Local Rule 230(g).

[3]. The facts in this section are drawn, in some cases verbatim, from the allegations as set forth in Plaintiffs' First Amended Complaint.

their primary means of communication. Both are on SSI and their Medi-Cal coverage was assigned to the Hills Medical Group, a large consortium of some 3,800 physicians. When their primary physician, Mark Moody, retired, both Plaintiffs needed to find a new doctor within the Hills Group. Plaintiffs Alexander and Porter were initially referred for that purpose to Drs. Kujok and Martinez, respectively.

Plaintiff Alexander was told by Dr. Kujok's office in April of 2014 that they were no longer accepting new patients once told she needed an ASL interpreter. Plaintiff's insurance agent then called and was ultimately told that Dr. Kujok was not willing to provide interpreting services.

Following Dr. Kujok's refusal to provide medical treatment with the aid of an ASL interpreter, Plaintiff Alexander sought care from several other Hills Physician Group doctors. In July of 2014, she was accepted as a patient by Dr. Debruin and scheduled an initial appointment on July 28, 2014. Dr. Debruin's office informed Plaintiff that they would not schedule an interpreter. Although his staff later told Plaintiff that they would make the necessary arrangements, when Alexander presented for her initial visit she was told that no interpreter had been ordered. During the course of his evaluation, Dr. Debruin told Alexander that she could communicate well and didn't need an interpreter. When Dr. Debruin suggested they use notes, Alexander explained that ASL is not English and is not directly translatable. According to Plaintiff, particularly when technical terms are involved, use of ASL is critical for purposes of accurate communication. Dr. Debruin's insistence that Plaintiff could in that event communicate in writing caused Alexander to leave his office.

Plaintiff Alexander was subsequently referred to a third potential primary care doctor, Dr. Kamra. Although Kamra's office staff originally advised Plaintiff that an ASL interpreter would be provided, when she arrived for her appointment no interpreter was present. Plaintiff went ahead and saw Dr. Kamra anyway because the foot injury she was suffering from had already been exacerbated by delay occasioned by the above-described interpreter issues. Alexander therefore felt she needed immediate attention and could not wait to reschedule. According to Plaintiff, her communication was impeded without an interpreter and Dr. Kamra failed to correctly note Plaintiff's allergy to iodine.

Dr. Kamra did refer Plaintiff to a podiatrist, Dr. Del Zotto, to evaluate a foreign body in her left foot. Dr. Del Zotto told Plaintiff, however, that his business partner, Dr. Larsen, refused to provide interpreting services and that she would have to go to a different podiatrist. Plaintiff's appointment with Dr. Del Zotto was accordingly cancelled.

As a result of the conduct of the above-described physicians, Plaintiff Alexander claims that she encountered almost a year's delay in obtaining treatment for her foot condition which both exacerbated her physical discomfort and caused emotional distress.

The history recounted by the other Plaintiff, Porter, is similar though not as extensive. Dr. Martinez did initially provide a sign language interpreter at his initial intake visit with Plaintiff Porter on April 29, 2014. When Martinez realized Plaintiff Porter was watching the interpreter, Porter claims that Martinez "grabbed" Porter's face and stated "don't look at her, look at me. You can read my lips." Porter at that point explained that he needed to look at the interpreter to understand what Dr. Martinez was saying. While Porter continued to see Dr. Martinez, after his third appointment, Porter claims that Dr. Martinez refused and/or failed to continue to provide a sign lan-

guage interpreter, despite Porter's claim he could not understand what Dr. Martinez told him by lip reading alone. Porter alleges that Dr. Martinez' staff hung up on him repeatedly when he called through a relay operator service once the operators explained they were calling on behalf of a deaf person. Porter further alleges that Dr. Martinez' office was prohibited from communicating with him by text message, even though that was an effective way to schedule appointments, which resulted in Porter being required to drive to Dr. Martinez' office and schedule his appointments in person.

Although Plaintiff Alexander never actually saw Dr. Martinez, she claims that when she learned about Dr. Martinez' conduct from plaintiff Porter she cancelled her own appointment with Martinez since she believed "there was a substantial likelihood she would suffer the same discriminatory treatment if she was examined by Martinez." FAC at ¶ 36.

Given these circumstances, Plaintiffs have sued the six doctors enumerated above. All six doctors have now filed similar, and in some instances virtually identical, motions to dismiss under Rules 12(b)(1) and 12(b)(6).

## STANDARD

### A. Motion to Dismiss for Lack of Standing

■ Where a plaintiff lacks standing to bring a claim, courts lack jurisdiction to hear that claim, and a motion to dismiss under Rule 12(b)(1) is appropriate. Ballentine v. United States, 486 F.3d 806, 810 (3d Cir.2007).

### B. Motion to Dismiss for Failure to State a Viable Claim

■ On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir.1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555, 127 S.Ct. 1955 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

■ Furthermore, "Rule 8(a)(2)...requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n. 3, 127 S.Ct. 1955 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on

which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. 1955. If the "plaintiffs...have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556, 127 S.Ct. 1955 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

 A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment...." Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party...carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir.1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir.2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.1989) ("Leave need not be granted where the amendment of the complaint...constitutes an exercise in futility....")).

**B. Motion to Strike**

 Rule 12(f) provides that a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a Rule 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." Whittlestone, Inc. v. Handi–Craft, 618 F.3d 970, 974 (9th Cir.2010).

**ANALYSIS**

**A. Rule 12(b)(1) Motions to Dismiss**

 As indicated above, standing is a jurisdictional issue, deriving from the requirement that an actionable case or controversy be present. Doe No. 1 v. Reed, 697 F.3d 1235, 1238 ( 9th Cir.2012). Standing must accordingly be "likely" as opposed to merely "speculative" so that the claimed injury is redressable by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The only relief available to private parties under the ADA is injunctive relief; monetary damages may not be recovered. See 42 U.S.C. § 12188; Jairath v. Dyer, 154 F.3d 1280, 1283 n. 7 (11th Cir.1998). Where injunctive relief is sought, a plaintiff must establish a reasonable likelihood of further violations. National Wildlife Federation v. Burlington Northern R.R., Inc., 23 F.3d 1508, 1511 ( 9th Cir.1994).

 In the context of a plaintiff seeking injunctive relief under the ADA, this means that Plaintiff here must demonstrate a "significant possibility of future harm." Vogel v. Rite Aid Corp., 992 F.Supp.2d 998, 1008 (C.D.Cal.2014). Defendants claim Plaintiffs lack standing to assert injunctive relief under the ADA because they cannot show any likelihood of ever returning for further care to the phy-

sicians who allegedly failed to accommodate their disability, and consequently cannot qualify for an injunction curbing further harm. Despite this requirement that future harm be identified, the ADA nonetheless makes it clear that a plaintiff need not engage in the "futile gesture" of attempting to return to a physician if the plaintiff already knows that reasonable accommodations will not be provided:

> Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions.

42 U.S.C. § 12188(a)(1).

■■■ This is consistent with the view that standing under remedial statutes, like the ADA, should be interpreted as broadly as permissible under the Constitution. See, e.g., Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 211–12, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972).

The "futile gesture" exception applies squarely to the circumstances of this matter. Given the barriers to effective accommodation both Plaintiffs already experienced, they were not required to resort to what would be the futile act of attempting to return to the same physicians who had already refused to facilitate effective communication on their part. Moreover, and in any event, Court further notes that while Plaintiffs allege they switched to a higher priced Medi-Cal provider that allowed them to choose physicians not affiliated with Hills Medical Group, they also claim they may not be able to afford that added cost in the long run and consequently may have to return to the Hills network and encounter the same denial of services. See FAC, ¶¶ 68-70. Plaintiffs accordingly reason that this eventuality may ultimately force them to return to Defendants for care despite their attempt to avoiding having to do so at the present time.

■■■ Under either alternative, and given the ADA's broad scope as a remedial statute, the Court finds that Plaintiffs have standing to assert their ADA claims against Defendants herein. The only exception is with respect to Plaintiff Alexander's claims against Dr. Martinez. Alexander never saw Dr. Martinez in the first place and consequently did not personally encounter a denial of "full and equal treatment because of her disability," as needed to assert any ADA claim in the first instance. Wilson v. Pier 1 Imps. (US), Inc., 439 F.Supp.2d 1054, 1067 (E.D.Cal.2006); Molski v. Hitching Post I Rest., Inc., 2005 WL 3952248 at *3 (C.D.Cal.2005). While Alexander claims she was dissuaded from doing so by Porter's experience with Dr. Martinez, any indirect harm in that regard is insufficient to confer standing for Alexander to assert her First Cause of Action under the ADA against Dr. Martinez. Additionally, because Alexander's Second and Third Causes of Action against Dr. Martinez, for violations of the Unruh Act and the California Disabled Persons Act, are expressly premised on Alexander's ability to make a claim under the ADA, those claims fail as against Dr. Martinez. Because the Rehabilitation Act is predicated on the same actual denial of services because of disability, Plaintiff's Sixth Cause of Action fails to the extent it is directed to Dr. Martinez as well. See Duvall v. County of Kitsap, 260 F.3d 1124, 1135 ( 9th Cir. 2001). Finally, since Plaintiff's Fourth Cause of Action for negligence against Dr. Martinez is also premised on breaches of duties owed under the ADA, Unruh Act and the Disabled Persons Act, it too fails. See FAC, ¶¶ 95-97.

## B. Rule 12(b)(6) Motions to Dismiss

■■■ On a substantive basis, Defendants' 12(b)(6) arguments present factual issues beyond the pleadings not amenable

to disposition by way of a motion to dismiss. Some of the Defendant physicians claim, for example, that they offered acceptable alternatives to Plaintiff's request for an ASL interpreter, such as communicating by note or by lip reading. The fact remains, however, that Plaintiffs allege in their complaint that any accommodations that may have been offered were not sufficient, since their ability to understand either spoken or written English is compromised. Plaintiff Alexander told Dr. Debruin that she had to have an ASL interpreter to communicate effectively, and could not understand him without one, either orally or in writing. FAC, ¶¶ 45, 50-52. Plaintiff Porter similarly told Dr. Martinez that he could not understand medical terminology without an interpreter when Martinez grabbed his face and told Porter that he should be looking at him and reading his lips. Id. at ¶¶ 33-34. Dr. Kamra refused to provide ASL interpreting services to Plaintiff Alexander, which she claims "directly and negatively impacted the quality of care provided" and resulted in the incorrect documentation of Alexander's medical allergies and omitting her allergy to iodine. Id. at ¶ 59.

Accepting Plaintiffs' allegations as true, as we must in evaluating a motion to dismiss, Plaintiffs claim they were excluded from meaningful participation in their medical treatment because, to the extent Defendants were willing to offer any accommodation measures, they were insufficient to facilitate effective communication.

The regulations implementing Title III of the ADA unequivocally require places of public accommodation to "furnish appropriate auxiliary aids and services...to ensure effective communication with individuals with disabilities." 28 C.F.R.

§ 36.303(c)(1). The test is not whether any auxiliary aid was offered but whether that aid would be sufficient to permit effective communication. Case law provides no definition of what constitutes effective communication. To the contrary, any such determination is a question of fact which cannot be resolved at this juncture. On the basis of the pleadings, Plaintiff has asserted that any accommodation offered was inadequate.

Plaintiffs have also alleged that they were excluded from treatment altogether because of their disability. Dr. Kujok allegedly refused to see Alexander at all once he was informed she was deaf and needed as ASL interpreter. Id. at ¶¶ 29-31. Dr. Martinez purportedly refused to allow Plaintiff Porter to even use a relay operator, or to communicate by way of text message in scheduling an appointment. Id. at ¶¶ 42-43. Dr. Del Zotto informed Plaintiff Alexander that because his office refused to provide the requested ASL interpreter she would need to get treatment from a different podiatrist. Id. at ¶ 64. Plaintiffs therefore also claim that they were prevented from seeking care altogether, even aside from whether accommodations offered in the course or providing care were adequate.

Plaintiffs' allegations are sufficient to state ADA claims as alleged in their First Cause of Action. In addition, because Second and Third Causes of Actions, for violation of the Unruh and Disabled Persons Acts, are predicated on the ADA violations, and since Defendants' arguments in contending that Plaintiffs cannot state a viable claim mirror their arguments with regard to the ADA claim, Defendants' challenges to the Second and Third Causes of Action also fail.[4]

---

4. The Court notes that some of the Defendants have alleged that the Disabled Persons Act is limited to instances where physically disabled individuals are denied access to

some public site or service because of their service. In the Court's view, however, hearing loss is no less of a physical impairment than mobility barriers which would preclude physi-

With respect to the Fourth Cause of Action for negligence, that claim is also predicated on the statutory violations as set forth in the prior causes of action. Plaintiffs have properly pled negligence in that regard. A negligence claim premised on alleged statutory duties requires only that the plaintiff plead violation of a statute, ordinance or regulation, that the violation proximately caused injury of the sort the enactment was designed to prevent, and that plaintiff is within the class of persons for whose protection the enactment at issue was adopted. Coppola v. Smith, 935 F.Supp.2d 993, 1017 (E.D.Cal. 2013). While a number of Defendants argue that the standards applicable to professional negligence should apply, the Court disagrees. Although Defendants herein are physicians, they are being sued here as the owners and operators of places of public accommodation, rather than because of their status as doctors per se. Therefore the professional negligence standards applicable to malpractice are not the proper yardstick by which to measure the viability of Plaintiffs' negligence claims.

. Plaintiffs' Sixth Cause of Action[5] alleges violation of the Rehabilitation Act on grounds that Section 504 of that Act prohibits any disabled person from being excluded from participation, due to his or her disability, from any program or activity receiving federal financial assistance. Plaintiffs contend that the Rehabilitation Act applies because their Medi-Cal coverage is jointly funded with both state and federal dollars. Defendants' main challenge

to the Rehabilitation Act claim rests with their assertion that the implementing regulations of the Act are limited with regard to the provision of "appropriate auxiliary aids to persons with impaired sensory manual, or speaking skills" to funding recipients employing fifteen or more persons. 45 C.F.R. § 84.52(d). Because the operative First Amended Complaint is silent with respect to whether any of the Defendants have the requisite number of employees, Defendants contend that the Rehabilitation Act fails to apply.

Contrary to Defendants' argument, however, this is not a case only about whether appropriate auxiliary aids have been provided. Instead, it is more fundamentally about allegations that Plaintiffs were denied access to Defendants' facilities altogether because of Defendants' refusal to provide reasonable accommodations. In general terms, the Rehabilitation Act prohibits "denying a qualified handicapped person [health, welfare and social services] on the basis of their handicap." 45 C.F.R. § 84.52(a)(1). A violation of that overarching provision, as Plaintiffs correctly point out, has no minimum employee requirement. Given the broad scope to which remedial provisions like those contained in the Rehabilitation Act are entitled, the Court cannot focus solely on the narrower question of auxiliary aids when Plaintiffs have in effect claimed that they were denied access altogether to Defendants' facilities due to their failure to make any reasonable accommodation.

cal access due to other disabilities. Significantly, too, because the Disabled Persons Act specifically states that violations of the ADA qualify as violations of the Act (at Cal. Civ. Code § 54(c)) and since there is no question that the ADA protects claims like those made by Plaintiffs herein, any argument otherwise would run counter to the express terms of the Act.

**5.** The Fifth Cause of Action, for violation of California's Bane Act (Cal. Civ. Code § 52.1), is limited to claims made by Plaintiff Porter against Dr. Martinez and has not been challenged by Dr. Martinez in his Motion to Dismiss.

Certain Defendants also argue that because Medi-Cal is a state as opposed to federal program, Defendants receiving monies from Medi-Cal do not actually receive federal dollars even though Medi-Cal itself does. See, e.g., Dr. Kamra Motion, ECF No. 23-1, 9:23-28. Defendants accordingly argue that in the absence of direct federal financial assistance, any liability under the Rehabilitation Act is not triggered. This argument lacks merit. Medi-Cal is California's Medicaid program, and Medicare and Medicaid payments have been widely interpreted as federal financial assistance when raised in the context of Section 504 litigation, like this case, brought against healthcare entities receiving such payments on behalf of individuals receiving health services. See. e.g., United States v. Baylor Univ. Med. Ctr. 736 F.2d 1039, 1042 (5th Cir.1984) (Medicare and Medicaid payments to a hospital's inpatient and emergency services program constituted federal financial assistance under Section 504); Doe v. Centinela Hospital, 1988 WL 81776 (C.D.Cal.1988) (residential alcohol and drug rehabilitation program which received Medicare funds for treatment of some patients was a recipient of federal financial assistance under the Rehabilitation Act).

Additionally, with regard to Plaintiff Alexander's attempt to obtain podiatric treatment from Defendant Del Zotto, Dr. Del Zotto and his alleged business partner, Defendant Larsen make some particular arguments that must be separately addressed. Defendant Del Zotto claims that he is an employee of a podiatric group owned by Defendant Larsen, and that as an employee he does not own or operate a place of public accommodation so as to incur liability under the ADA, or under Alexander's other claims that rest upon her having established an ADA claim. Del Zotto includes a declaration to that effect and contends he had no authority to enact or amend policy. Del Zotto consequently alleges that Alexander cannot state a viable claim against him.

 The problem with Del Zotto's argument is that it stems from matters outside the pleading; namely, the declaration he submits. Matters extraneous to the pleading should not be considered in the context of a motion to dismiss under Rule 12(b)(6), which with exceptions not relevant here must depend on the allegations made within the four corners of the complaint. See Standard Investment Chartered Inc. v. NASD, 621 F.Supp.2d 55, 66 (S.D.N.Y.2007). Plaintiff's First Amended Complaint alleges just to the contrary in stating that "DEL ZOTTO provides medical services to patients who are members of the public." FAC, ¶ 64. While the FAC does allege that Larsen, as the "business partner" in the office, was the individual who refused to provide the requested ASL interpreter to Plaintiff Alexander, nowhere does it indicate that Del Zotto was merely an employee.

Both Del Zotto and Larsen also argue that they should be dismissed from Plaintiff Alexander's Rehabilitation Act cause of action on grounds that podiatry services are not a covered benefit under California's Med-Cal program pursuant to California Welfare and Institutions Code § 14131.10. That argument is also misplaced. Section 14131.10 states only the Medi-Cal will not pay for optional podiatric services, and Plaintiff alleges that her foot injury did not entail such an "optional" treatment. In any event, whether or not the treatment Alexander required was optional or not requires a factual evaluation that cannot be resolved here.

C. Motion to Strike

As a final matter, Dr. Larsen asks the Court to strike Plaintiff's prayer for punitive damages on grounds that no such damages are authorized under any of the

causes of action pled by Plaintiffs in their complaint. Dr. Larsen accordingly contends that punitive damages are unavailable here as a matter of law, citing an Eighth Circuit decision, <u>Tapley v. Lockwood Green Engineers, Inc.</u>, 502 F.2d 559, 560 (8th Cir.1974) to support that proposition.

■ While Dr. Larsen correctly points out that Plaintiffs failed to oppose his argument in that regard, the problem with the course he recommends is that it is directly contrary to applicable precedent in this circuit. In <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, 618 F.3d 970 (9th Cir.2010), the Ninth Circuit found that a Rule 12 motion is not available to strike legally inapplicable damage requests since an improper prayer is neither an "insufficient defense" nor a "redundant, immaterial, impertinent or scandalous" so as to come within the express purview of Rule 12. <u>Id.</u> at 973–74, 976. Consequently this Court cannot grant Dr. Larsen's Motion to Strike.

### CONCLUSION

For all the reasons set forth below, Dr. Martinez' Motion to Dismiss (ECF No. 28) is GRANTED as to Plaintiff Alexander's claims against Martinez in their entirety. Because Plaintiff Alexander essentially concedes that her claims against Martinez are not well taken, no leave to amend will be permitted. Dr. Martinez' Motion to Dismiss is otherwise DENIED. The Motions to Dismiss brought on behalf of Drs. Del Zotto (ECF No. 22), Kamra (ECF No. 23); Kujok (ECF No. 26), Debruin (ECF No. 27), and Larsen (ECF No. 65) are DENIED. Plaintiff Larsen's request that punitive damages be stricken from Plaintiffs' FAC is also DENIED.

IT IS SO ORDERED.