RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0132p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────

MICHIGAN FLYER LLC; INDIAN TRAILS,
INCORPORATED,

        *Plaintiffs-Appellants/Cross-Appellees*,

     *v.*

WAYNE COUNTY AIRPORT AUTHORITY,

        *Defendant-Appellee/Cross-Appellant*.

Nos. 16-1205/1255

───────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-11512—David M. Lawson, District Judge.

Argued: January 26, 2017

Decided and Filed: June 22, 2017

Before: BOGGS, SILER, and DONALD, Circuit Judges.

───────────

## COUNSEL

**ARGUED:** Jason M. Turkish, NYMAN TURKISH PC, Southfield, Michigan, for
Appellants/Cross-Appellees. Gary K. August, ZAUSMER, AUGUST & CALDWELL, P.C.,
Farmington Hills, Michigan, for Appellee/Cross-Appellant. **ON BRIEF:** Jason M. Turkish,
Ryan T. Kaiser, Melissa M. Nyman, NYMAN TURKISH PC, Southfield, Michigan, for
Appellants/Cross-Appellees. Gary K. August, ZAUSMER, AUGUST & CALDWELL, P.C.,
Farmington Hills, Michigan, for Appellee/Cross-Appellant.

───────────

## OPINION

───────────

     SILER, Circuit Judge. Plaintiffs Michigan Flyer and Indian Trails provide public
transportation services. Plaintiffs supported two disabled individuals' lawsuits against

Defendant Wayne County Airport Authority ("Airport") because some of Plaintiffs' customers are disabled. Airport allegedly began retaliating against Plaintiffs for this support. Plaintiffs sued under the provisions of Title V of the Americans with Disabilities Act ("ADA"). The district court dismissed the lawsuit, denied reopening, and denied Airport's claim for attorney's fees. We affirm the district court because it did not err in dismissing the action and did not abuse its discretion in denying reopening or attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Michigan Flyer provides public transportation services to the Detroit Metro area. It also provides services on behalf of the Ann Arbor Area Transportation Authority. Indian Trails is the parent company of Michigan Flyer. In 2014, two disabled individuals sued Airport to prevent Airport from moving the public transportation bus stop from the curbside at the terminal. Michigan Flyer and Indian Trails ("Plaintiffs") provided support to the disabled individuals in the lawsuit. After the lawsuit settled, Plaintiffs allege that Airport retaliated against them for their role in the lawsuit. Among the list of alleged conduct, Plaintiffs allege that Airport extended preferential access to all other transportation providers.

Plaintiffs sued Airport for violation of the ADA Title V provisions. The district court dismissed the lawsuit. Subsequently, the district court denied Plaintiffs' motion to reopen the case pursuant to Federal Rule of Civil Procedure 59 and Airport's motion for attorney's fees.

## II. MOTION TO DISMISS

Plaintiffs brought suit for retaliation under 42 U.S.C. § 12203(a). The district court dismissed the lawsuit holding that "individual," as used in the statute, did not protect corporate entities. Plaintiffs argue that the term "individual" should be interpreted broadly to protect it from retaliatory actions because the ADA's remedial scheme is broad, Supreme Court precedent supports the finding that "individuals" can include corporations, and agency regulation supports its broad interpretation of the term "individual." Therefore, the question for our review is whether the word "individuals" as found in 42 U.S.C. § 12203(a) includes corporate entities.

a. STANDARD OF REVIEW

We review a district court's order granting a motion to dismiss de novo. *Lambert v. Hartman*, 517 F.3d 433, 438–39 (6th Cir. 2008).

b. TEXT/CONGRESSIONAL INTENT

Our review must begin with the plain language of the statute because the "language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." (citation omitted)). 42 U.S.C. § 12203(a) provides:

> No person shall discriminate against any *individual* because such *individual* has opposed any act or practice made unlawful by this chapter or because such *individual* made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(emphasis added). As the ADA does not define "individual," it should be interpreted by the common usage of the word. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.").

The Supreme Court recently provided guidance on the ordinary meaning of the word "individual" in *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012). The Court held that "[t]he ordinary meaning of the word, fortified by its statutory context, persuades us that the [Torture Victim Protection] Act authorizes suit against natural persons alone." *Id.* at 1706. The Court first noted that "'individual' ordinarily means '[a] human being, a person.'" *Id.* at 1707 (quoting 7 *The Oxford English Dictionary* 880 (2d ed. 1989)). It also noted that the term "individual" is used in everyday parlance as denoting a human being, and the Court, itself, "routinely uses 'individual' to denote a natural person, and in particular to distinguish between a natural person and a corporation." *Id*. Other courts faced with a similar task have also held that "individual" does not include corporate entities. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 393 (4th

Cir. 2011) ("In our view, then, when Congress uses the noun 'individual'—rather than the broader term 'person'—it should ordinarily be construed to mean a human being or natural person."); *Jonson v. C.I.R.*, 353 F.3d 1181, 1184 (10th Cir. 2003) ("When the word 'individual' is used elsewhere in the Internal Revenue Code, the context almost always compels it to be construed to mean a human being."); *In re North,* 12 F.3d 252, 254–55 (D.C. Cir. 1994) (per curiam) (holding that the term individual in the Ethics in Government Act's fee provisions is limited to human beings); *Mar. Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.),* 920 F.2d 183, 184-85 (2d Cir. 1990) (holding that "individual" under the Bankruptcy Code means "human beings" rather than "corporations and other legal entities").

In response, Plaintiffs point to *Mohamad*'s recognition that "Congress remains free, as always, to give the word a broader or different meaning." 132 S. Ct. at 1707. Plaintiffs also argue that *Clinton v. City of New York*, 524 U.S. 417 (1998), provides support that "individual" can mean a non-human person.

In *Clinton,* the Court held that "Congress undoubtedly intended the word 'individual' to be construed as synonymous with the word 'person.'" *Id.* at 428. The same cannot be said for the intent of Congress with the ADA. First, and most damaging to reliance on *Clinton*, is the fact that the terms "person" and "individual" are both used in 42 U.S.C. § 12203(a): "No *person* shall discriminate against any *individual* . . . ." (emphasis added). If Congress had "undoubtedly intended" the word "individual" to mean "person," it would have used the term "person" again five words later. Instead, Congress knowingly used two distinct terms, understanding the difference that each term provides to the statute. Second, the "language and design" of the ADA would not make sense if "individual" was to mean corporate entities. *See Choice*, 201 F.3d at 840. For example, the ADA uses "individuals" in the following manner: "individuals with hearing impairments," 42 U.S.C. § 12103(1)(A); an "individual's uncorrected vision," 42 U.S.C. § 12113(c); and "an individual [who] has an infectious or communicable disease," 42 U.S.C. § 12113(e)(2). In each scenario, replacing "individual" with "corporate entity" would make the statute incoherent and thus must be avoided. *Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("observing the interpretive presumption that a given term is used to mean the same thing throughout a statute"). This fact is compounded with the understanding that Congress

appreciates the difference between the terms "person" and "individual." "[F]ederal statutes routinely distinguish between an 'individual' and an organizational entity." *Mohamad*, 132 S. Ct. at 1707. Title I of the ADA even instructs that the "term[] 'person' . . . shall have the same meaning given . . . in section 2000e of this title." 42 U.S.C. § 12111(7). Section 2000e(a) states: "The term 'person' includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, or receivers." Therefore, the term "individual" is distinct from the term "corporation."

### c. ADA'S REMEDIAL SCHEME AND AGENCY INTERPRETATION

As a rebuttal to the unambiguous text,[1] Plaintiffs argue that the remedial scheme of the ADA requires the term "individual" to be interpreted as broadly as possible. *See Summers v. Altarum Inst., Corp.,* 740 F.3d 325, 330 (4th Cir. 2014) ("Congress also mandated that the ADA, as amended, be interpreted as broadly as its text permits."); *Alexander v. Kujok*, 158 F. Supp. 3d 1012, 1019 (E.D. Cal. 2016) ("[T]he ADA should be interpreted as broadly as permissible under the Constitution."). According to Plaintiffs, interpreting "individual" narrowly would result in unfair treatment of corporations that defend the rights of disabled individuals.

This is unpersuasive. The fact that a statute has a broad remedial structure does not allow us to interpret its text in a way that conflicts with its plain language. *See Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc.,* 788 F.3d 218, 224 (6th Cir. 2015); *see also Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1061 (6th Cir. 2014) ("[C]ourts should presume Congress intended a term to have its settled, common-law definition 'unless [the statute] clearly indicates otherwise,' even over the argument that a broad reading is necessary to 'advance . . . [an act's] remedial purposes.'" (second and third alteration and omission in original) (quoting *Nationwide Mut. Ins. v. Darden*, 503 U.S. 318, 325 (1992))). Furthermore, the remedial structure of the

---

[1]Plaintiffs' reliance on *King v. Burwell* is misguided because the term "individual" in this case is unambiguous. 135 S. Ct. 2480, 2489–90 (2015) ("If we give the phrase 'the State that established the Exchange' its most natural meaning, there would be *no* 'qualified individuals' on Federal Exchanges. But the Act clearly contemplates that there will be qualified individuals on *every* Exchange."). Instead, this case can be resolved through the basic rule of statutory interpretation that started the *King* Court's analysis, "If the statutory language is plain, we must enforce it according to its terms." *Id.*

ADA has been limited in other contexts without undermining the remedial purpose. *See, e.g., Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013) (no cognizable employment discrimination claim under Title II); *see also Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) ("Title II of the ADA does not provide for individual capacity suits against state officials.").

As a final effort to prove that the remedial scheme requires the broad interpretation of "individual," Plaintiffs rely on the Department of Justice's ("DOJ") regulation. 28 C.F.R. § 36.206(c)(4) lists prohibited conduct, including: "Retaliating against any *person* because that *person* has participated in any investigation or action to enforce the Act . . . ." (emphases added). According to Plaintiffs, the DOJ has corrected the "'inartful' drafting of Title V" and provides relief for corporate entities that are retaliated against.

This argument fails. First, "individual," as used in the statute, is unambiguous; therefore no deference is afforded to the DOJ's interpretation. *See Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997) ("Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (quoting *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 240 (1989))). As we have clearly articulated, "[w]hen the statute is unambiguous, there has been no delegation to the agency to interpret the statute and therefore the agency's interpretation deserves no consideration at all, much less deference." *Terrell v. United States*, 564 F.3d 442, 450 (6th Cir. 2009).

Second, the fact that the regulation uses the term "person" in the illustration does not support Plaintiffs' argument that the term "individual" should be replaced entirely with "person." 28 C.F.R. § 36.206(a) states:

> No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

This language mirrors completely the ADA's language. If the DOJ was truly correcting "inartful drafting," it would not have included the term "individual" in its own regulation. *See also* 56 Fed. Reg. 35544, 35559, 1991 WL 304374 (July 26, 1991) ("This section protects not only

individuals who allege a violation of the Act or this part, but also any individuals who support or assist them."). Additionally, if the DOJ intended to change the ordinary meaning of "individual" found in the statute, it would have made clear this intention in the regulation.

Accordingly, we hold that 42 U.S.C. § 12203(a)'s use of the term "individual" is unambiguous and does not include corporations.

### III. FEDERAL RULE OF CIVIL PROCEDURE 59 MOTION

After the trial court granted Airport's motion to dismiss, Plaintiffs moved the court to reopen the case and grant Plaintiffs leave to amend their complaint. Specifically, Plaintiffs sought leave to amend the complaint in two respects. First, they wanted to add allegations to the Title V claim alleging that Airport's conduct was directed toward Oded Norkin, Vice President of Michigan Flyer. Second, Plaintiffs also wanted to add an additional count under Title II of the ADA. The district court denied this request on three grounds: (1) its own previous decision was not an intervening change in controlling law; (2) the strategic decision not to request leave to amend until after an adverse judgment was entered did not result in manifest injustice; and (3) the proposed amendments were futile. We affirm the denial of Plaintiffs' motion under Fed. R. Civ. P. 59 because the district court did not abuse its discretion by finding that its decision was not an intervening change in controlling law and that the Plaintiffs' strategic decision not to request leave until after an adverse judgment was entered did not result in manifest injustice.

#### a. STANDARD OF REVIEW

A party seeking leave to amend after an adverse judgment faces a heavier burden than for a Rule 15 leave to amend motion prior to a final ruling. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.,* 616 F.3d 612, 616 (6th Cir. 2010). A Rule 59 motion should only be granted if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Id.* at 615.

"We review the denial of a Rule 59(e) motion for an abuse of discretion." *Ventas, Inc. v. HCP, Inc.,* 647 F.3d 291, 328 (6th Cir. 2011). "A motion under Rule 59(e) is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374

(6th Cir. 1998). "If a permissive amendment policy applied after adverse judgments, plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision.'" *Leisure Caviar*, 616 F.3d at 616 (quoting *James v. Watt*, 716 F.2d 71, 78 (1st Cir. 1983)). "That would sidestep the narrow grounds for obtaining post-judgment relief under Rules 59 and 60, make the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities." *Id.*

b. <u>INTERVENING CHANGE/MANIFEST INJUSTICE</u>

Plaintiffs first argue that the district court's decision in this case constituted an intervening change in controlling law. Under this theory, Plaintiffs believe Rule 59(e) relief is warranted because the district court interpreted "individual" under the ADA for the first time.

This argument is unpersuasive. To accept this argument would essentially grant the losing party in every matter of first impression the unlimited right for relief under Rule 59. This would certainly "sidestep the narrow grounds for obtaining post-judgment relief under Rules 59 and 60, mak[ing] the finality of judgments an interim concept and risk turning Rules 59 and 60 into nullities." *Id.*

In addition to the "intervening change in the controlling law" argument, Plaintiffs also argue that denial of their Rule 59 motion resulted in manifest injustice. *See GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999) (listing the four grounds for relief and including both "an intervening change in controlling law" and "manifest injustice").

This argument also fails. We have noted that "manifest injustice" does not occur when a losing party attempts to "correct what has—in hindsight—turned out to be poor strategic decision." *Id.* Plaintiffs had numerous opportunities to seek leave to amend under Rule 15 to add the new allegations and claim.[2] Plaintiffs could have even sought leave after Airport filed its motion to dismiss and laid out its position. At that time, Plaintiffs were well aware of arguments

---

[2]Plaintiffs admit that this was a result of strategic decisions. Plaintiffs aver the Title II claim "was not raised in the original complaint because the direct cause of action for Plaintiffs is the statutory tort created by the Retaliation Provision of Title V. However, because the Court has ruled that a non-human entity cannot sustain a cause of action for Retaliation, Plaintiffs must now turn to this regulation to remedy their injury." Plaintiffs also assert that it wanted to add the Norkin allegations so that "Defendant's conduct was directed at a natural person" and this would allow Plaintiffs to "overcome the Court's holding that Title V only protects natural persons."

that "individual" may not include a corporate entity. Instead, strategically, Plaintiffs proceeded with the case to the point that the district court dismissed their action. Now, Plaintiffs seek reopening due to this poor strategic decision. However, if the district court would have granted this motion, it ultimately would have participated in a situation where Plaintiffs "use[d] the court as a sounding board to discover holes in their arguments, then 'reopen[ed] the case by amending their complaint to take account of the court's decision.'" *Leisure Caviar*, 616 F.3d at 616 (citation omitted). Therefore, the district court did not abuse its discretion. Instead, it remained committed to the finality of judgment and prevented Plaintiffs from sidestepping Rule 59. *Id*; *see also Moore v. Coffee Cty.,* 402 F. App'x 107, 109 (6th Cir. 2010) (holding that no abuse of discretion exists when district court dismisses claims because plaintiff neglected to request remand prior to judgment).

*Morse v. McWhorter*, 290 F.3d 795 (6th Cir. 2002), does not compel a different result. In *Morse,* the magistrate judge in a report and recommendation ("R&R") recommended that defendant's motion to dismiss be granted "without prejudice to re-file upon disclosing more specific facts." *Id.* at 798. The plaintiffs filed objections to the R&R, but also requested "leave to re-plead, consistent with the recommendation of the Report . . . and Rule 15(a)." *Id.* After reviewing the R&R, the district court dismissed the complaint with prejudice and subsequently denied a motion under Rule 59(e). We then vacated and remanded the case to allow leave to amend. *Id.* at 801.

*Morse* is distinguishable. First, the *Morse* plaintiffs requested leave to amend prior to the dismissal of the action. *Id.* In this case, Airport was not "put . . . on notice that plaintiffs would seek to amend their complaint" until after the judgment was entered. *Id.* at 801. Second, the dismissal in *Morse* concerned factual allegations rather than legal issues, as are presented in this case. *Id.* at 798. Third, the proposed amendments in *Morse* did not "substantially revise any present defense strategy because the plaintiffs' proposed second amended complaint does not add new substantive claims or overhaul plaintiffs' theory of the case, but merely attempts to remedy the defects identified by the magistrate." *Id.* at 801. In this case, however, Plaintiffs proposed to add a new claim altogether: violation of ADA's Title II.

### IV.  MOTION FOR ATTORNEY'S FEES

After prevailing in the district court, Airport requested the district court to award attorney's fees.  The district court denied the motion and Airport appeals.  We affirm because the district court did not abuse its discretion.

a. <u>STANDARD OF REVIEW</u>

Section 12205 allows the court "in its discretion" to award reasonable attorney's fees to the prevailing party. "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a [civil rights] case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421 (1978). The purpose of this heightened requirement is that it reduces the "chilling effect on a plaintiff who seeks to enforce his/her civil rights." *Riddle v. Egensperger*, 266 F.3d 542, 551 (6th Cir. 2001).

Airport argues that this heightened standard does not apply to this case because it concerns a for-profit corporation. *See Goldrich, Kest & Stern v. City of San Fernando*, 617 F. Supp. 557, 564–65 (C.D. Cal. 1985) ("[T]he chilling effects of an award of attorney's fees to prevailing defendants as against a corporate-type plaintiff is de minimus [sic].").

b. <u>ANALYSIS</u>

We need not decide whether the heightened *Christiansburg* standard applies in all, some, or no cases brought by a for-profit corporation.  In this case, Plaintiffs brought an action that was a matter of first impression with no Sixth Circuit precedent on point.  Although *Mohamad* existed*,* the Supreme Court also had decided *Clinton*.  In addition, the DOJ's illustration used "person" instead of "individuals."  Therefore, it was clearly within the district court's discretion not to award attorney's fees in this case because this litigation resulted in clarification of the law not known to Plaintiffs.

**AFFIRMED**.