INDUSTRIAL FIBERGLASS, a
Montana corporation, Plaintiff
and Appellee,

v.

Larry E. JANDT, Defendant
and Appellant.

Civ. No. 10620.

Supreme Court of North Dakota.

Jan. 16, 1985.

Howe, Hardy, Galloway & Maus, Dickinson, for plaintiff and appellee; argued by Craig Campbell, Dickinson.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for defendant and appellant; argued by Steven L. Latham, Bismarck.

GIERKE, Justice.

The defendant, Larry E. Jandt, appeals from a judgment against him in the amount of $14,765, and from an order denying his motion for a new trial. We affirm.

The plaintiff, Industrial Fiberglass (IFC), a Montana corporation, manufactured and delivered water tanks to Jandt pursuant to an open account agreement. A dispute arose between the parties concerning defects in the tanks, and Jandt refused to pay the outstanding balance on his account. IFC commenced an action to recover the unpaid balance of the account plus interest. Jandt answered and counterclaimed alleging IFC had breached its warranty and also had converted Jandt's design of the tanks. Following a bench trial, the district court entered judgment in favor of IFC and dismissed Jandt's counterclaim. Jandt made a motion for a new trial which was denied.

The record reflects that early in 1980 Jandt contacted IFC seeking its assistance in manufacturing portable fiberglass tanks to contain water suitable for human consumption. Jandt proposed to lease the tanks to oil companies for use at drilling sites where drinking water was unavailable. Jandt submitted his own design for the tanks to IFC. Following consultation with IFC's fiberglass engineer, Jandt and IFC agreed on the specifications and IFC submitted a bid for the cost to manufacture and deliver the tanks. IFC also provided its standard one-year warranty covering labor and materials. Jandt orally accepted IFC's bid, and an open account was established in his name. Jandt and IFC also discussed, but did not contract to grant Jandt an exclusive franchise to purchase the tanks.

IFC shipped three tanks to Jandt on April 17, 1980, and similar shipments continued periodically until September 9, 1980, the date of the final delivery. Receipt of all but the final shipment was acknowledged by either Jandt or his wife signing the invoice. There was no signature on the final invoice. Jandt made payment in full to IFC on all shipments except the final shipment of four tanks.

Within 60 to 90 days following delivery of each shipment, Jandt noticed defects occurring in the interior and exterior of the tanks. Jandt notified IFC orally and by letter of the defects and IFC made numerous repairs on various tanks over the course of a year. Jandt testified that, among other things, the interior lining of

the tanks was peeling, bubbling and cracking, thus making the water unfit for drinking. However, IFC representatives testified that Jandt had never specifically informed them that the tanks were peeling, bubbling or cracking. Contemporaneous with this ongoing pattern of complaints by Jandt and repairs by IFC, Jandt continued to order, receive, and put into use additional tanks manufactured by IFC. This sequence of events continued until Jandt refused to pay IFC for the total price of the last shipment of four tanks until the defects in the existing tanks were repaired to his satisfaction. Subsequent to Jandt's refusal to pay for the final four tanks, IFC sold a number of tanks manufactured for Jandt to other purchasers. IFC then commenced this action.

The district court determined that, by failing to reject the tanks or specifically advise IFC of any defects that were not timely cured, Jandt was estopped from raising claims that IFC breached its warranty, and that Jandt, by signing the invoices, was obligated to pay IFC the purchase price of the tanks within 30 days of delivery or pay a monthly finance charge of one and one-half percent on the unpaid balance. The court ruled that, even if IFC had breached its warranty, an award of damages would be purely speculative because Jandt failed to prove specific damages and that the value of the tanks upon delivery to Jandt was not diminished by any defects which may have existed at that time. The court also determined that no exclusive dealing contract between IFC and Jandt was demonstrated, and thus IFC breached no contractual terms by selling tanks to purchasers other than Jandt.

The dispositive issues raised in this appeal are whether or not the trial court erred: (1) in finding that Jandt never notified IFC of specific defects in the tanks which were not timely cured; (2) in determining that the invoices signed by Jandt constituted a written contract sufficient to permit the charging of interest at the rate of one and one-half percent per month on any unpaid balance; and (3) in denying Jandt's motion for a new trial without issuing a written memorandum concisely stating the grounds upon which the ruling was based.

**I**

Section 41–02–70(3)(a)(2–607), N.D.C.C., provides that where a buyer has accepted a tender of goods, "[t]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Jandt asserts that the trial court too strictly construed the notice requirement and that his oral and written communications advising IFC that there was a problem with the interior lining of the tanks was sufficient notice of breach. Jandt relies on Official Comment 4 to U.C.C. § 2–607, which states in part:

"The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2–605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation."

Although the first sentence of the quoted portion of the Official Comment indicates mere notice that a transaction is "troublesome" is sufficient, courts have refused to give the statute such a liberal interpretation when the transaction is between merchants. *See K & M Joint Venture v. Smith Intern., Inc.*, 669 F.2d 1106 (6th Cir.1982); *Standard Alliance Ind. v. Black Clawson Co.*, 587 F.2d 813 (6th Cir. 1978), *cert. denied*, 441 U.S. 923, 99 S.Ct.

2032, 60 L.Ed.2d 396 (1979); *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir.1976); *Nugent v. Popular Markets, Inc.*, 353 Mass. 45, 228 N.E.2d 91 (1967); *Fischer v. Mead Johnson Laboratories*, 41 A.D.2d 737, 341 N.Y.S.2d 257 (1973). In *Eastern Air Lines, Inc.*, *supra*, 532 F.2d at 976, the court stated:

"[T]he fact that the Code has eliminated the technical rigors of the notice requirement under the Uniform Sales Act does not require the conclusion that any expression of discontent by a buyer always satisfies section 2–607. As Comment 4 indicates, a buyer's conduct under section 2–607 must satisfy the Code's standard of commercial good faith. Thus, while the buyer must inform the seller that the transaction is 'still troublesome,' Comment 4 also requires that the notification 'be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.'"

■ What constitutes adequate notice from an inexperienced consumer may not be sufficient in a transaction between professionals. We agree with the rationale of the above-cited cases which require more than minimal notice, and higher standards of commercial good faith, where both parties are merchants engaged in on-going transactions.

■ Jandt submitted his own design for the tanks to IFC and consulted on various occasions with IFC's fiberglass engineer. He was in the business of leasing the water tanks to his customers. Jandt therefore qualifies as "a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction...." Section 41–02–04(3)(2–104), N.D.C.C. *See Eichenberger v. Wilhelm*, 244 N.W.2d 691

(N.D.1976). Consequently, Jandt's status, relative to his dealings with IFC, is that of a "merchant" as defined in § 41–02–04(3)(2–104), N.D.C.C.[1] Thus, the requirement of more than minimal notice and of higher standards of commercial good faith applies in the instant case.

■ The sufficiency of notice and what constitutes a reasonable time within which to give notice of breach of warranty are ordinarily questions of fact. *Rowe Intern., Inc. v. J–B Enterprises, Inc.*, 647 F.2d 830 (8th Cir.1981); *Wilson v. Marquette Electronics, Inc.*, 630 F.2d 575 (8th Cir.1980); Annot., 93 A.L.R.3d 363 (1979). A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. Rule 52(a), N.D.R.Civ.P.; *e.g.*, *Bye v. Elvick*, 336 N.W.2d 106 (N.D.1983). A finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made; the mere fact the appellate court might have viewed the facts differently if it had been the initial trier of the case does not entitle it to reverse the lower court. *E.g.*, *George v. Compson*, 251 N.W.2d 743 (N.D. 1977).

■ The record reflects that Jandt continued to order additional water tanks after he complained of defects, and he continued to lease the tanks to customers. Margaret Efta, the former office manager of IFC, testified that the last time she accompanied employees to the location of the tanks to perform warranty work was in July 1981. She testified that "[w]hen we had fixed them I went up to Mr. Jandt and asked him if there was anything more and he said no." Both Efta and Ralph Bawden, one of the owners of IFC, testified that Jandt had never informed them that the

---

1. We do not suggest that Jandt, as a lessor rather than a seller of goods, would necessarily qualify as a "merchant" with regard to his dealings with his own customers. We express no opinion on this question, or the question whether or not Chapter 41–02, N.D.C.C. (Article 2 of the Uniform Commercial Code), applies to leas-

ing transactions. *See, e.g., Glenn Dick Equipment Co. v. Galey Construction, Inc.*, 97 Idaho 216, 541 P.2d 1184 (1975); *All-States Leasing Company v. Bass*, 96 Idaho 873, 538 P.2d 1177 (1975); *Patriot General Life Ins. v. CFC Inv. Co.*, 11 Mass.App.Ct. 857, 420 N.E.2d 918 (1981); Annot., 48 A.L.R.3d 668 (1973).

insides of the tanks were bubbling or cracking. In view of Jandt's actions, it was reasonable for IFC employees to believe that although there were some minor difficulties with the tanks, Jandt did not consider the problems to amount to a breach of warranty. The trial court's finding that Jandt never notified IFC of any specific defects which were not timely cured is supported by the evidence and is not clearly erroneous. Thus, under § 41–02–70(3)(a), N.D.C.C., Jandt is barred from recovery for breach of warranty.[2]

## II

Jandt asserts that the trial court erred in concluding that his signing of the invoices upon delivery of the tanks constituted a written contract sufficient to permit the charging of interest at the rate of one and one-half percent per month on any unpaid balance. He contends that the trial court "would not allow parol evidence by Jandt as to his understanding of the agreement between Jandt and IFC as to the payment of interest." Jandt also asserts that because the last invoice was unsigned there was no agreement to pay interest on the unpaid balance for that invoice which represents the balance IFC is seeking to collect.

The invoices contain a provision which states in part that "[t]he purchaser hereby agrees to pay to the seller a FINANCE CHARGE of 1½% per month, which is an ANNUAL PERCENTAGE RATE of 18% on all amounts not paid within 30 days of the date of sale." All but the final invoice were signed by either Jandt or his wife upon delivery of the tanks.

It does not appear from the record that the trial court expressly ruled that parol evidence regarding the payment of interest was inadmissible. During the trial, the following colloquy occurred:

"THE COURT: I caution both counsel that we are getting into a lot of parole (sic) evidence without objection. The invoices specify that the full amount is due ten days from the date of sale and that the purchaser agrees to a finance charge of one and one half percent per month. It's my opinion that that governs the payment terms no matter what the prior oral discussions might have been. Is there any reason it does not? I will hear argument for either counsel on that for not more than two minutes each.

"MR. MURTHA (counsel for Jandt): No, I, I, I'm merely trying to find out if he really ever had to wait very long for the money. That is the only thing. I don't care what is mentioned in the contract or the invoices rather.

"THE COURT: You may proceed then."

Our review of the record reveals that Jandt made no offer of proof and made no attempt to offer evidence regarding different terms for the payment of interest. Although the trial court expressed its opinion on the admissibility of parol evidence in this situation, it did not rule on the issue.

Section 47–14–05, N.D.C.C., provides in part that "[i]interest for any legal indebtedness shall be at the rate of six percent per annum unless a different rate not to exceed the rate specified in section 47–14–09 is contracted for in writing." IFC, relying on §§ 41–02–09(2–202) and 41–02–11(2–204), N.D.C.C.,[3] contends that the previous in-

---

**2.** Jandt has also asserted that the trial court erred in determining 30 days was a reasonable time in which he was to have discovered and notified IFC of a breach of warranty. The problem with this argument is that the trial court made no such ruling. The trial court determined that "[a] reasonable time for the defendant to have inspected the tanks and make an effective rejection pursuant to section 41–02–69, N.D.C.C. (§ 2–606 U.C.C.), was thirty (30) days because the defendant put the tanks to immediate use." The court's determination related only to the issue of Jandt's acceptance of the goods

and the time in which he could have effectively rejected them, which is an issue separate and distinct from a "reasonable time" in which a buyer who has already accepted the goods must give notice of a breach of warranty pursuant to § 41–02–70 (2–607), N.D.C.C.

**3.** Sections 41–02–09 (2–202) and 41–02–11 (2–204), N.D.C.C., provide:

"*41–02–09. (2–202) Final written expression—Parol or extrinsic evidence.* Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise

voices signed by either Jandt or his wife constituted an exchange of written memoranda intended by the parties to express their agreement and that the invoices were sufficient to form a contract in writing for the 18 percent annual interest rate.

■ The record reflects that IFC and Jandt had extensive dealings with one another. We have already determined that Jandt's status in this case is that of a merchant. The invoices, which were in the same form, clearly stated that the finance charge would be assessed on the account. An invoice was used in each of the eight transactions between the parties for the sale and purchase of the goods. Two of the invoices and IFC's summary of the invoices indicate that finance charges totalling $729.98 had previously been assessed on Jandt's open account and that these charges had been paid. It does not appear from the record that Jandt objected to these finance charges. Rather, Jandt continued to purchase and accept the tanks shipped following his payment of the finance charges. Jandt had also made a partial payment of $4,247 on the last shipment. These circumstances support the trial court's determination that, even though the final invoice was not signed by Jandt, the stipulation in the invoices formed a contract in writing by the parties for the 18 percent annual interest to be charged on the account. *See Dean Vivian Homes v. Sebera's Plumbing & Appliances, Inc.*, 615 S.W.2d 921 (Tex.Civ.App. 1981); *cf. Hawkins v. Frick-Reid Supply Corporation*, 154 F.2d 88 (5th Cir.1946);

set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

"1. By course of dealing or usage of trade (section 41–01–15) or by course of performance (section 41–02–15); and

"2. By evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement."

*W.H. Barber v. McNamara-Vivant Contr. Co.*, 293 N.W.2d 351 (Minn.1979).

■ Jandt also asserts that because IFC did not comply with the provisions of §§ 13–01–14 and 13–01–15, N.D.C.C., the maximum interest rate to which IFC is entitled is six percent. However, in *Metric Const. v. Great Plains Properties*, 344 N.W.2d 679, 683 (N.D.1984), we held that the two statutes relied on by Jandt do not apply to "transactions where the obligation was created by a contract which includes a provision for payment of 'interest' or 'finance charges,' or which contains any other language imposing an obligation to pay added compensation unless payment is made by a specified time."

### III

Finally, Jandt asserts that he is entitled to a new trial because the trial court abused its discretion under Rule 59(f), N.D. R.Civ.P., in failing to issue a "written memorandum concisely stating the different grounds on which the ruling" denying his motion was based. Jandt essentially raised the same issues in his motion for a new trial as he raised in his appeal from the judgment.

■ We have determined that the trial court did not err in rendering judgment in favor of IFC in this case. Jandt's assertion that he is entitled to a new trial solely because the trial court did not concisely state the grounds on which the ruling was based is without merit.

"41–02–11. (2–204) *Formation in general*.
"1. A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.
"2. An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.
"3. Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

For the reasons stated in this opinion, the judgment and order denying Jandt's motion for a new trial are affirmed.

ERICKSTAD, C.J., VANDE WALLE, J., and PEDERSON, Surrogate Justice, concur.

Surrogate Justice PEDERSON participated in this case by assignment pursuant to § 27–17–03, N.D.C.C.

Justice PAUL M. SAND, who died on December 8, 1984, was a member of this Court at the time this case was submitted.