**STAMPER BLACK HILLS GOLD JEWELRY, INC., Plaintiff, Appellee and Cross–Appellant,**

v.

**Ron SOUTHER, d/b/a Souther's Jewelry, Defendant, Appellant and Cross–Appellee.**

Civ. No. 870030.

Supreme Court of North Dakota.

Oct. 21, 1987.

Hoovestol Law Firm, Bismarck, for plaintiff, appellee, and cross-appellant; argued by James L. Norris.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for defendant, appellant and cross-appellee; argued by Irvin B. Nodland.

ERICKSTAD, Chief Justice.

Ron Souther, d/b/a Souther's Jewelry, appeals from a district court judgment awarding Stamper Black Hills Gold Jewelry, Inc. (Stamper), $50,000 plus interest and awarding Souther as a setoff against the judgment $7,560 plus interest on his counterclaim against Stamper. Stamper has cross-appealed from the judgment. We affirm in part, vacate in part, and remand for further proceedings.

In September 1984 Souther and Julie McNabb, the manager of Souther's Jewelry, a retail business, attended a jewelry show in Mandan to order merchandise for the Christmas season. At the show, Souther and McNabb met with Roy Dishman, general manager and vice president of Stamper, a jewelry wholesale business. Souther and McNabb discussed with Dishman problems they had experienced with delivery from Stamper during 1983. Souther preferred Stamper's merchandise and was willing to drop two other lines of merchandise from other companies and order exclusively from Stamper if he could be assured that delivery would be timely. Dishman told them that the delivery problems had been solved. Souther and Dishman initially negotiated for a purchase of $33,000 in merchandise to be delivered by November 1, 1984, with a 10 percent discount. Dishman was uncertain what terms

of payment he could offer but agreed to discuss the matter with superiors.

The payment terms, set forth in a letter from Stamper dated October 5, 1984, called for the issuance of post-dated checks to accompany Souther's order. Upon receiving the letter, Souther decided to increase the order to $55,000 if Stamper was willing to extend a 10 percent discount and accept post-dated checks for payment. Souther knew that the new credit arrangements had to be approved by the home office, that this would take additional time, and that delivery could not be expected by November 1, 1984. Stamper agreed to the enlarged order and Souther sent post-dated checks, which were required to accompany the order, on November 7, 1984. The checks were dated January 15, 1985, for $20,000; February 15, 1985, for $15,000; and March 15, 1985, for $15,000. Although no express delivery date for the enlarged order was agreed upon by the parties, Dishman and Stamper knew that Souther wanted the merchandise so that it would be available for Thanksgiving shoppers. Stamper did not advise Souther, upon his inquiry about enlarging the order, that the shipment of merchandise would not arrive as Souther contemplated or that there might be backorders of the more desirable merchandise.

A $19,875 shipment of merchandise was received by Souther before Thanksgiving on November 21, 1984, and a smaller shipment of $666 in merchandise was received before December 1, 1984. The remainder of the $55,000 order was received by Souther between December 5 and 10, 1984. Souther was able to sell only 25 percent of the merchandise during the 1984 Christmas season. Souther stopped payment on the three post-dated checks and eventually went out of business in 1986.

Stamper brought this action against Souther in July 1985 seeking payment for the jewelry. Souther counterclaimed seeking $30,000 in lost profits due to Stamper's late delivery of the merchandise. The parties stipulated to the amount owed to Stamper for the merchandise and agreed that the only issues for litigation were those raised by the counterclaim. Following a bench trial, the court determined that because no time for delivery of the enlarged order was expressly agreed upon by the parties, shipment was to be made by Stamper within a reasonable time. *See* § 41-01-14(3) [1-204], N.D.C.C. The court found that any order not sent in time to be received by December 1, 1984, was not a shipment made within a reasonable time. The court found that 63 percent of the merchandise was not delivered by December 1, 1984, and was therefore in breach of contract. The court determined that Souther was entitled to damages for lost profits in the amount of $7,560 plus interest. The court setoff this amount against the $50,000 judgment entered against Souther on Stamper's action to recover for the cost of the merchandise.

On appeal Souther asserts that the trial court erred in calculating the amount of lost profits. Stamper raises several issues in its cross-appeal, one of which is dispositive, making it unnecessary to address the other issues raised.

Stamper asserted at trial that Souther was barred from seeking damages in its counterclaim because Souther did not notify Stamper of the breach within a reasonable time under § 41-02-70(3)(a) [2-607], N.D.C.C. The trial court made no findings of fact on whether Souther notified Stamper of the late delivery breach within a reasonable time, but stated as follows:

"It was the plaintiff's contention that the defendant did not comply with Section 41-02-70(3)(a) which required notification within a reasonable time of a claimed breach the lack of which caused him to be barred from all remedies. In the Memorandum Decision and Findings of Facts, I concluded that under the provisions of Section 41-02-78(3) the plaintiff was required to notify the defendant that there would be a delay in delivery. Since the only breach would have been the delay in delivery, and since the plaintiff was already obligated by virtue of the latter section to notify the defendant, I did not feel that the other section had any application. The plaintiff already

knew of the breach, and I am not convinced that the kind of breach contemplated by 41–02–70 is a delay in delivery breach. Further, this is an affirmative defense and was not pled as a bar."

Stamper asserts that the trial court erred in determining that § 41–02–70(3)(a) [2–607], N.D.C.C., was inapplicable. We agree.

Section 41–02–70(3)(a) [2–607], N.D.C.C., provides:

> "*41–02–70. (2–607) Effect of acceptance—Notice of breach—Burden of establishing breach after acceptance—Notice of claim or litigation to person answerable over.*
>
> \* \* \* \* \*
>
> "3. Where a tender has been accepted:
>
> "a. The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

■ Failure to provide notice of breach under this section is not an affirmative defense which must be raised by the seller. Rather, notice is a condition precedent to the buyer's cause of action which must be pleaded and proved by the buyer in order to recover. *E.g., Maybank v. S.S. Kresge Co.,* 302 N.C. 129, 273 S.E.2d 681, 683 (1981); *Hepper v. Triple U Enterprises, Inc.,* 388 N.W.2d 525, 527 (S.D.1986); 3 A. Squillante and J. Fonseca, Williston on Sales § 22–11, at p. 296 (4th ed. 1974); 4 R.

Anderson, *Uniform Commercial Code* § 2–607:7 (3d ed. 1983).

■ Relying principally upon *Jay v. Zimmerman Company v. General Mills, Inc.,* 327 F.Supp. 1198 (E.D.Mo.1971), Souther asserts that the notice requirement of U.C.C. § 2–607 is not applicable to a breach of contract caused by delivery delays. In *Jay v. Zimmerman Company, supra,* 327 F.Supp. at 1204, the court determined that because both the seller and buyer are necessarily aware prior to tender that the seller's contract obligation to timely delivery has not been complied with, "[i]t would be an unreasonable, if not absurd, construction of the statute to require a renewed notice of breach *after* acceptance of the goods...." (Emphasis in original). Souther further asserts that because the purpose of the notice requirement is to enable the seller to minimize damages by correcting the defect, and because nothing can be done to cure a late delivery, the requirement of notice "simply makes no sense" in this case. We find Souther's argument unpersuasive.

Courts which have addressed the question since *Jay v. Zimmerman Company* was decided have rejected its reasoning and have held that the U.C.C. § 2–607 notice requirement is applicable to any breach of contract, including delivery delays. *See Roth Steel Products v. Sharon Steel Corp.,* 705 F.2d 134 (6th Cir.1983); *Eastern Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957 (5th Cir.1976); *Armco Steel Corp. v. Isaacson Structural Steel Co.,* 611 P.2d 507, 510 n. 8 (Alaska 1980).[1]

---

1. Section 2–607 of the Uniform Commercial Code was intended to continue the basic policies underlying § 49 of the Uniform Sales Act. *See Eastern Air Lines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 972 (5th Cir.1976); Official Comment to U.C.C. § 2–607. The notice of breach requirement under § 49 of the Uniform Sales Act had similarly been interpreted to apply to breach of contract actions based upon late delivery. Judge Learned Hand explained:

> "The plaintiff replies that the buyer is not required to give notice of what the seller already knows, but this confuses two quite different things. The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim

that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning."

*American Mfg. Co. v. United States Shipping Board E.F. Corp.,* 7 F.2d 565, 566 (2d Cir.1925). *See also Champion Animal Food Co. v. L.B. Reich Distributing Co.,* 78 N.E.2d 180 (Ohio Ct. App.1947) [claim for damages for late delivery of merchandise for Christmas trade was waived where buyer had full knowledge of the lateness of delivery at the time the goods were received but gave no notice of breach to the seller]; 5 W. Jaeger, *Williston on Contracts* § 714, at pp. 409–410 (3d ed. 1961).

In so concluding, the courts have noted that enabling the seller to minimize damages by correcting the defect is not the sole function of the notice requirement. One commentator has stated:

"One principal function is to prevent 'stale' claims, as well as imaginary ones, conceived by a buyer who has not paid for the goods and is looking for a counterclaim to assert when the seller sues for the price of goods delivered and accepted by the buyer. The notice requirement also opens the way for settlement negotiations prior to the initiation of a lawsuit, a process the Code seeks to encourage. Prompt notice of breach also protects the seller's interests by allowing him to investigate the claim while the facts are still fresh, to inspect the goods before their condition changes, to avoid the defect in the future, to contact witnesses before they disappear, and to assert timely claims of his own against third parties who may in turn be responsible to the seller for the breach."

G. Wallach, *The Law of Sales Under the Uniform Commercial Code* ¶ 11.14, at p. 11–67 (1981) [Footnotes omitted]. We agree with the rationale of the court in *Roth Steel Products, supra,* 705 F.2d at 152–153:

"These same purposes are served by requiring notice of breach in instances where the goods are conforming, but the performance is late, or at a higher price than the contract allows. Often, a seller's failure to conform to the terms of the contract may not amount to a clear breach. For example, his performance may not conform for reasons which are beyond his control and which would excuse his failure to perform. *See* ... (U.C.C. Sec. 2–615). Also, custom or usage of trade often permit deviations in performance, *see* ... (U.C.C. Sec. 2–103(1)(b)); ... (U.C.C. Sec. 2–208); a seller may believe his performance is acceptable, even though it does not strictly conform to the contract. *See generally,* ... (U.C.C. Sec. 2–504); ... (U.C.C. Sec. 2–612(3)). In short, non-conforming performance is often equivocal. The statute, by its terms, requires notice with regards to 'any breach' and the same policies which support a rule requiring notice of breach when a latent defect is discovered also support a rule requiring notice of breach when performance does not conform to time or price terms of the contract. Thus, we hold that ... (U.C.C. Sec. 2–607(3)) requires a buyer, who has accepted a non-conforming tender, to give notice of breach to seller that he has not performed according to the terms of the contract. *Eastern Airlines v. McDonnell Douglas Corp.,* 532 F.2d at 972–73; *MacGregor v. McReki, Inc.,* 30 Colo.App. 196, 494 P.2d 1297 (1971)." [Citations and footnotes omitted.]

We conclude that the trial court erred in determining that § 41–02–70(3)(a) [2–607], N.D.C.C., is inapplicable to a breach of contract action based upon delivery delays.

■ It is undisputed in this case that both Souther and Stamper are "merchants" as defined in § 41–02–04(3) [2–104], N.D.C.C. In *Industrial Fiberglass v. Jandt,* 361 N.W.2d 595, 598 (N.D.1985), this court noted that what constitutes adequate notice of breach from an inexperienced consumer may not be sufficient in a transaction between professionals, and held that "more than minimal notice, and higher standards of commercial good faith [are required] where both parties are merchants engaged in on-going transactions." Thus, while mere notice that a transaction is "troublesome" may be sufficient in the case of a consumer's claim for breach of contract, the notification by a merchant buyer must be such as informs the seller that the transaction is claimed to involve a breach of contract. *Jandt, supra* (quoting *Eastern Airlines, Inc., supra* ); *see also Southern Illinois Stone Co. v. Universal Engineering,* 592 F.2d 446, 452 (8th Cir.1979) ["It is not enough that the seller be given notice of the mere facts constituting a nonconforming tender; he must also be informed that the buyer considers him to be in breach of the contract."].

■ The sufficiency of notice and what constitutes a reasonable time within which to give notice of breach are questions of fact. *Jandt, supra.* The trial

court in this case, having concluded that the notice requirement was inapplicable to a late delivery breach, made no findings of fact on either the adequacy or the timeliness of notice. Because notice of breach is a prerequisite to the maintenance of Souther's counterclaim, addressing the other issues raised by the parties without the trial court's resolution of this factual issue would be tantamount to rendering an advisory opinion. We therefore remand this case to the trial court for the preparation of factual findings on whether Souther sufficiently notified Stamper of the late delivery breach within a reasonable time pursuant to § 41–02–70(3)(a) [2–607], N.D.C.C. *See Roth Steel Products, supra*, 705 F.2d at 153–154.

Accordingly, we affirm that part of the district court's judgment awarding Stamper $50,000 plus interest, but we vacate that part of the judgment awarding Souther $7,560 plus interest on his counterclaim against Stamper, and remand for determination of and preparation of factual findings on the notice issue. Should the trial court determine that notice was adequate, it may reinstate the judgment on the counterclaim subject to appeal to this court on all issues not decided in this opinion.

LEVINE, VANDE WALLE, MESCHKE and GIERKE, JJ., concur.