**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 20a0005n.06

No. 19-5406

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 07, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES A. BUNN, dba Bunn Trucking, | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| NAVISTAR, INC., dba International Used | ) | |
| Truck Center, | ) | **OPINION** |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |

Before: CLAY, STRANCH, and MURPHY, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Bunn Trucking appeals the dismissal of his breach of express warranty and breach of implied warranty of merchantability claims against Defendant Navistar in this products-liability lawsuit. Plaintiff also appeals the denial of his Rule 59(e) motion to alter or amend the district court's judgment. For the reasons set forth below, we **AFFIRM** the decisions of the district court.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a sole proprietor doing business as Bunn Trucking. Defendant Navistar is a manufacturer of heavy-duty trucks. On June 13, 2018, Plaintiff, represented by counsel, initiated this products-liability action against Defendant in Tennessee state court, alleging the following facts.

On April 19, 2017, Plaintiff purchased two second-hand trucks from Defendant's dealership. One truck had 183,864 miles on it at the time of purchase ("Truck 1"), and the other truck had 141,229 miles on it at the time of purchase ("Truck 2"). Plaintiff purchased a written warranty for each truck, with each warranty covering the respective truck for 24 months or 200,000 miles. At the time of the purchase, Defendant's agents warranted that the trucks were free from defects and in perfect working order. Defendant assured Plaintiff that the trucks were suitable to perform the duties for which they were manufactured. Upon purchasing the written warranty, Defendant assured Plaintiff that Navistar technicians would be readily available to make any necessary repairs. However, shortly after making the purchase, Plaintiff began to experience numerous shortcomings with both trucks. For example, within three months of purchase, Truck 1 required a complete engine replacement and was out of service for two weeks. After the engine was replaced, Truck 1 continued to have problems and, since the date of purchase, was out of service for a total of nine months. Within four months of purchase, Truck 2 required a complete engine replacement. After the engine was replaced, Truck 2 continued to have problems and, since the date of purchase, was out of service for a total of eight months.

According to Plaintiff, the issues with the trucks included "(a) repeated instances of check engine lights illuminating; (b) fuel pump failure; (c) sensor 'shortage' issues; (d) 'knocking' in the engine requiring replacement; (e) excessive 'smoke' and hissing of the engine requiring replacement; (f) gasket replacement; (g) clogged hoses; (h) A/C blower and compressor failure; (i) complete engine failure; (j) other failures that prevented the Trucks from operating as warranted." R. 1-1, Pg. ID 9. Plaintiff alleged that he "repeatedly notified Defendant of the defects related to the trucks, but Defendants [sic] failed to make repairs sufficient to correct the defects."

2

*Id.* at Pg. ID 10.  Due to Defendant's inability or unwillingness to obtain necessary parts, Plaintiff experienced extensive delays for several months in getting the trucks repaired.  Plaintiff lost a "substantial amount of income" due to the trucks' unreliability and the downtime required for repairs.  *Id.* at Pg. ID 9.  Specifically, Plaintiff lost contracts with his client, Kochlogistics, worth approximately $133,645.00 between April 22, 2017 and June 1, 2018.  Plaintiff stated that "[u]pon information and belief, Defendant became aware trucks sold to Plaintiff were inadequate for public distribution." *Id.* at Pg. ID 10.

## B. Procedural History

In construing his own complaint in his favor, Plaintiff asserted the following causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; (4) intentional misrepresentation (fraud); and (5) two counts of violating the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104(b)(7).

Defendant removed the action to federal court on the basis of diversity jurisdiction. Defendant then moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.  First, Defendant argued that Plaintiff's claims for breach of express and implied warranties should be dismissed because Plaintiff failed to allege that the trucks were defective at the time they were delivered and for failure to provide pre-suit notice of the breach, as required by Tennessee law.  Next, Defendant argued that Plaintiff's fraud claim should be dismissed under the economic loss doctrine and because Plaintiff failed to comply with the heightened pleading requirements of Rule 9(b). Defendant then argued that Plaintiff's first TCPA count should be dismissed because the TCPA

provision that Defendant allegedly violated only applies to "goods" that are obtained for use by an individual "primarily for personal, family, or household purposes," a category which clearly did not encompass the heavy-duty trucks used in Plaintiff's business. R. 8, Pg. ID 47–48 (quoting Tenn. Code. Ann. § 47-18-103(8)). Lastly, Defendant moved to dismiss Plaintiff's second TCPA count for failure to comply with the heightened pleading requirements of Rule 9(b).

In his response to Defendant's motion to dismiss, Plaintiff conceded that the economic loss doctrine barred his intentional misrepresentation claim and "aver[red] that Paragraph Nos. 38-43 of the Complaint should be stricken." R. 12, Pg. ID 168. Plaintiff also conceded that his first TCPA claim was inapplicable to the action and "aver[red] that Paragraph 45(a) of the Complaint should be stricken." *Id.* With regards to his second TCPA claim, Plaintiff stated that, "[a]s it pertains to the Plaintiff's allegations contained in Paragraph 45(b) of the Complaint, Plaintiff will be filing a Motion to Amend pursuant to Federal Rule of Civil Procedure 15(a)(2) for the purpose of pleading, with sufficient particularity, Defendant's violation of the Tennessee Consumer Protection Act as set forth in Paragraph 45(b) of the Complaint." *Id.* at Pg. ID 169. In addition, Plaintiff clarified that he was not suing on the basis of the written warranty that he had purchased from Defendant, but rather on the basis of statements allegedly made by Defendant's agents at the time of purchase.

Plaintiff did not at any time amend his complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1). *See* Fed. R. Civ. P. 15(a)(1). And, Plaintiff did not at any time obtain Defendant's written consent to amend his complaint or otherwise file a motion seeking leave of the court to amend the complaint in order to bolster his second TCPA claim. *See* Fed. R. Civ. P. 15(a)(2).

On January 25, 2019, the district court entered a judgment granting Defendant's motion to dismiss in its entirety. The district court reasoned that Plaintiff's breach of express warranty and breach of implied warranty of merchantability claims should be dismissed because Plaintiff failed to plausibly allege that Defendant's alleged warranties were false at the time they were made. The district court dismissed Plaintiff's implied warranty of fitness for a particular purpose claim, finding that "Plaintiff's stated 'particular purpose' is really an ordinary purpose—using heavy-duty trucks for a commercial trucking business—and not a particular purpose capable of supporting his claim." R. 28, Pg. ID 234. Lastly, the court dismissed Plaintiff's second TCPA claim, finding that in the "approximately eight months after Plaintiff's response was filed . . . Plaintiff has not filed a motion to amend the TCPA claim," and the claim, as pleaded in the original complaint, did not plausibly allege any basis on which relief could be granted. *Id.* at Pg. ID 236.

Following the district court's dismissal, Plaintiff filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). Plaintiff's ground for moving to reopen the judgment was Plaintiff's counsel's mistaken impression that a complaint could not be amended prior to the initial case management conference. After Defendant filed a response to Plaintiff's motion, the district court entered an order denying Plaintiff's Rule 59(e) motion on March 15, 2019. The district court found Plaintiff's argument "nonsensical" because nothing in either the Federal Rules or Local Rules impairs Plaintiff's ability to amend his complaint as of right or seek leave to do so prior to the initial case management conference. R. 35, Pg. ID 261–62.

On April 9, 2019, Plaintiff filed a notice of appeal as to the district court's order denying his Rule 59(e) motion. On April 15, 2019, Plaintiff filed a timely Amended Notice of Appeal clarifying that he appeals both the district court's January 25, 2019 judgment dismissing the action, and the district court's March 15, 2019 order denying his Rule 59(e) motion.

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of a motion to dismiss. *Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, 864 F.3d 455, 458 (6th Cir. 2017). In doing so, we may affirm the district court's decision on any ground that is supported by the record. *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010). A motion to dismiss is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* To evaluate a complaint's sufficiency, courts in this circuit follow three steps. "First, the court must accept all of the plaintiff's factual allegations as true. . . . Second, the court must draw all reasonable inferences in the plaintiff's favor. . . . And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (citations omitted).

### III. ANALYSIS

**A. Implied Warranty of Fitness for a Particular Purpose & Plaintiff's First TCPA Claim**

As a preliminary matter, Plaintiff does not challenge the district court's dismissal of his implied warranty of fitness for a particular purpose claim or the dismissal of his first TCPA claim (*i.e.*, that alleged in Paragraph 45(a) of the complaint) in his briefs before this Court. And, Plaintiff's counsel acknowledged at oral argument that Plaintiff is not appealing the dismissal of his implied warranty of fitness for a particular purpose claim. Therefore, we consider those arguments waived and affirm the district court's dismissal of those claims. *See, e.g.*, *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[Plaintiff's] failure to raise an argument in his appellate brief constitutes a waiver of the argument on appeal.").

**B. Breach of Express Warranty & the Implied Warranty of Merchantability**

Plaintiff contends that the district court erred by dismissing its breach of express warranty and breach of implied warranty of merchantability claims under Rule 12(b)(6). The elements for breach of express warranty in Tennessee are: "(1) the seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) the buyer was, in fact, induced by the seller's acts; and (3) the affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty." *Jones v. WFM-Wo, Inc.*, 265 F. Supp. 3d 775, 781 (M.D. Tenn. 2017) (quoting *Smith v. TimberPro Inc.*, No. W2016-00757-COA-R3-CV, 2017 WL 943317, at *3 (Tenn. Ct. App. Mar. 9, 2017)); *see also* Tenn. Code Ann. § 47-2-313. To make out a claim for breach of the implied warranty of merchantability, a plaintiff must show that the seller is a merchant with respect to goods of that kind and that the goods were not fit for the ordinary purposes for which such goods are used at the time they were delivered. *Dan Stern Homes, Inc. v. Designer*

*Floors & Homes, Inc.*, No. M2008–00065–COA–R3–CV, 2009 WL 1910955, at \*4 (Tenn. Ct. App. June 30, 2009) (citing Tenn. Code Ann. § 47-2-314). The implied warranty of merchantability applies to second-hand goods. *See* Tenn. Code Ann. § 47-2-314, cmt. 3; *see also Patton v. McHone*, 822 S.W.2d 608, 616 (Tenn. Ct. App. 1991). The district court dismissed both of Plaintiff's warranty claims, finding that Plaintiff failed to plausibly allege that the warranties were false at the time they were made or that the trucks were not fit for ordinary use at the time they were delivered. We now affirm the district court's decision, although on different grounds. *See, e.g.*, *La. Sch. Emps.' Ret. Sys.*, 622 F.3d at 477.

In the court below, Defendant moved to dismiss, in part, on the ground that Plaintiff failed to adequately plead notice as required by Tennessee Code Annotated § 47-2-607(3). Section 47-2-607(3) of the Tennessee Code is Tennessee's version of section 2-607(3) of the Uniform Commercial Code. It provides in part that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Tenn. Code Ann. § 47-2-607(3). Similarly, the damages provision for breach of warranty provides that "[w]here the buyer has accepted goods and *given notification* (§ 47-2-607(3)) he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." Tenn. Code Ann. § 47-2-714 (emphasis added). According to Tennessee courts, "[n]otification pursuant to Tenn. Code Ann. § 47-2-607 is an essential ingredient for an action for damages." *Carmichael & Carmichael, Inc. v. Nicholstone Companies, Inc.*, No. 01-A-01-9104-CV00148, 1992 WL 172404, at \*6 (Tenn. Ct. App. July 24, 1992). "The purpose of giving notice of breach is to allow the breaching party to cure the breach and thereby avoid the

necessity of litigating the matter in court." *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011); *see also* Tenn. Code Ann. § 47-2-607(3), cmt. 4.

In determining whether Plaintiff's claims should be dismissed for failure to comply with § 47-2-607(3), this Court must answer two questions. First, was Plaintiff required to plead notice in his complaint (that is, was he required to plead facts that would plausibly satisfy § 47-2-607's notice requirement)? And, if so, what type of notice was required under the statute? Was it enough for Plaintiff to allege that he notified Defendant of the various defects with the trucks, or was he required to notify Defendant that those defects, in Plaintiff's view, amounted to a breach of warranty?

We answer the first question in the affirmative based solely on Plaintiff's litigation conduct. Plaintiff has never argued, either to this Court or to the district court, that his warranty claims are not subject to the Tennessee notice statute. In fact, Plaintiff concedes in his briefs before this Court that his claims are governed by § 47-2-607(3). And, Plaintiff conceded at oral argument that his complaint was required to contain an adequate inference of notice pursuant to § 47-2-607(3). In other words, Plaintiff has never argued that failure to satisfy § 47-2-607(3) should be raised as an affirmative defense, and instead concedes that satisfaction of the statute is a condition precedent to suit in Tennessee. Therefore, although some state courts have treated similar notice requirements as affirmative defenses rather than elements of the claim that must be pled, *compare, e.g.*, *Reid v. Eckerds Drugs, Inc.*, 253 S.E.2d 344, 347, 350 (N.C. App. 1979) (affirmative defense), *with, e.g.*, *Stamper Black Hills Gold Jewelry, Inc. v. Souther*, 414 N.W.2d 601, 604 (N.D. 1987) (element), we find that Plaintiff has forfeited any such argument in this case.[1] Thus, for purposes

---

[1] While Tennessee courts have yet to resolve this question, other courts interpreting Tennessee law have dismissed warranty claims for failure to adequately plead notice under Tenn. Code Ann. § 47-2-607(3). *See, e.g.*,

of this appeal and in line with Plaintiff's litigation conduct, we conclude that Plaintiff was required to plead facts giving rise to a plausible inference of notice in compliance with § 47-2-607(3).

Next, we must determine whether Plaintiff's allegations in his complaint satisfy that requirement. For the reasons that follow, we find that they do not. Plaintiff argues that he sufficiently pled notice, either because the complaint itself constituted sufficient notice according to the Middle District of Tennessee's holding in a personal-injury case, *Smith v. Pfizer*, 688 F. Supp. 2d 735 (M.D. Tenn. 2010), or because his "allegations of major repairs . . . satisfy the requirement under Tennessee law regarding notice." Appellant Br. at 16. We find each of these arguments unavailing.

In *Smith v. Pfizer*, the district court held that "a personal injury plaintiff can give notice by filing suit" and, thus, does not have to allege any pre-suit notification of breach to satisfy § 47-2-607(3). 688 F. Supp. 2d at 750. However, the court expressly distinguished commercial cases: "As envisioned by Tenn. Code Ann. § 47-2-607(3)(a), a seller of goods with timely notice that they are nonconforming may inspect the goods . . . and then cure the defects or preserve evidence that no breach occurred." *Id.* at 750–51 (quoting *Duffy Tool & Stamping v. Bosch Auto. Motor Sys. Corp.*, No. M1997-00144-COA-R3-CV, 2000 WL 122225, at *3 (Tenn. Ct. App. Feb. 1, 2000)). But, the court stated, "notice serves a different purpose in personal injury cases." *Id.* at 751. Unlike in a commercial case, opportunity to cure in a personal injury case has no significance "because the defect has already caused the harm and the seller can do nothing to remedy the

---

*Siriano v. Goodman Mfg. Co.*, No. 2:14-cv-1131, 2015 WL 12748033, at *7–8 (S.D. Ohio Aug. 18, 2015); *Rysewyk v. Sears Holdings Corp.*, No. 15-cv-4519, 2015 WL 9259886, at *4 (N.D. Ill. Dec. 18, 2015); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 931–32 (9th Cir. 2011) ("The district court properly dismissed these common law claims because Plaintiffs failed to provide Defendants with reasonable notice." (applying Cal. Com. Code § 2607(3)(A)). In any event, we do not decide in this case whether Tennessee courts would consider notice as a condition precedent to suit because Plaintiff has forfeited any argument to the contrary.

situation that has already occurred." *Id.* (quoting Lary Lawrence, 6 Lawrence's Anderson on the Uniform Commercial Code § 2–607:7 (3d. ed. 2009)). This is a commercial case, and under current Tennessee law, *Pfizer* is thus inapplicable.

Next, we must determine whether Plaintiff's allegations that he notified Defendant of the defects is sufficient to plausibly allege that he put Defendant on notice of an alleged breach under § 47-2-607(3). This is a more difficult question. Plaintiff argues that this Court should adopt a relaxed view of how Tennessee courts would interpret § 47-2-607(3)'s notice requirement. In Plaintiff's view, his allegation that he told Defendant about certain defects with the trucks was enough to adequately plead notice under § 47-2-607(3). In response, Defendant asks this Court to find that Tennessee courts would adhere to the traditional, stricter reading of notice statutes such as § 47-2-607(3) whereby it is not enough for a buyer to notify a seller simply of problems with a good; instead, the buyer must notify the seller that, in the buyer's view, the problems rise to the level of a breach. Defendant points out this Court has historically adhered to the stricter view when interpreting analogous notice statutes. For example, in a line of cases including *Running Springs Associates v. Masonite Corp.*, we analyzed Ohio's identical notice statute. 680 F.2d 469 (6th Cir. 1982). In concluding that the statute requires notice that the problems with the goods rise to the level of breach, rather than mere notice of the defect, this Court cited with approval the oft-quoted language from Judge Learned Hand:

> The plaintiff replies that the buyer is not required to give notice of what the seller already knows, but this confuses two quite different things. The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach. The purpose of the notice is to advise the seller that he must meet a claim for damages, as to which, rightly or wrongly, the law requires that he shall have early warning.

*Id.* at 469–70 (quoting *Am. Mfg. Co. v. U.S. Shipping Board E. F. Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)). Relying on this language, we held that Ohio's identical notice statute requires a buyer to put a seller on notice that "it was considered to be in breach" and not simply that the buyer "was experiencing difficulties with the goods." *Id.* at 470 (quoting *K & M Joint Venture v. Smith Int'l, Inc.*, 669 F.2d 1106, 1113 (6th Cir. 1982)); *accord Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 825 (6th Cir. 1978). *But see Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 638 (Ohio 1989) (rejecting the strict reading of the Ohio notice statute in favor of the more relaxed view).

Tennessee courts have not recently spoken to this issue. And, although Tennessee may eventually articulate a different interpretation of its notice statute, at this time, we think it appropriate to assume that Tennessee courts would adhere to the traditional view that plaintiffs must allege that they provided notice of a breach (*i.e.*, that the defendant will be asked to meet a claim for damages) in commercial cases such as this. That interpretation is supported by the plain language of the statute. *See* Tenn. Code Ann. § 47-2-607(3) ("Where a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller *of breach* or be barred from any remedy." (emphasis added)). Our view is further informed by early Tennessee case law.

In *Wildman Manufacturing Co. v. Davenport Hosiery Mills*, 249 S.W. 984 (Tenn. 1923), the Supreme Court of Tennessee considered what type of notice was required under the notice provision of the Uniform Sales Act of 1919 (the predecessor of UCC § 2-607).[2] The defendant-

---

[2] The relevant provision of the Uniform Sales Act required that "if, after acceptance of the goods, the buyer fail[s] to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows or ought to know of such breach, the seller shall not be liable therefor." *Wildman*, 249 S.W. at 986 (quoting Uniform Sales Act, § 49 (1919).)

seller in *Wildman* had consistently failed to deliver machines on time to the buyer. *Id.* at 987. The buyer, in turn, repeatedly sent letters notifying the seller of the problems with the delivery delays, but did not notify the seller of its intention to make a claim for damages. *Id.* at 988–91. After reviewing several cases holding that the buyer is required to put the seller on notice of a breach under the Uniform Sales Act (*i.e.*, to put the seller on notice that the buyer intends to seek a claim for damages), the Tennessee Supreme Court found that many of the buyer's letters to the seller in *Wildman* did not constitute sufficient notice under the Act. *Id.* at 993. For example, regarding the buyer's first letter to the seller, the court stated that "[w]hile this letter is full of complaints, and refers to the broken promises of the [seller], we see nothing here indicating an intention to claim damages for breach of contract." *Id.* at 989. The court adopted the chancellor's view that "a claim for damages, and not merely a complaint or announcement of trouble, was necessary" under the Act. *Id.* at 992. That is, the Tennessee Supreme Court held that it wasn't until the buyer put the seller on notice that it intended to make a claim for damages that the notice provision of the Act was satisfied. *Id.* at 993.

*Wildman*'s holding aligns with our holding in *Running Springs*, and with the traditional view and the plain language of the notice statutes. Moreover, this interpretation is especially applicable in this case where Plaintiff purchased a written warranty, which evidenced the parties' shared understanding that the second-hand trucks may need repairs at some point. Because Plaintiff and Navistar mutually anticipated that the trucks may need repairs at some point, it seems particularly unlikely that Plaintiff's request for repairs would put Navistar on notice that the transaction is claimed to involve a breach under § 47-2-607(3). *Cf.* Tenn. Code Ann. § 47-2-607, cmt. 4 ("The notification which saves the buyer's rights under this Article need only be such as

13

informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.").

For these reasons, we find that Plaintiff was required to plead that he put Navistar on notice that the transaction was "claimed to involve a breach, and thus open[] the way for normal settlement through negotiation" under current Tennessee law. *Id.* Because Plaintiff's complaint does not contain such allegations, the district court properly dismissed the breach of express warranty and breach of implied warranty of merchantability claims for failure to state a claim under Rule 12(b)(6). [3]

## C. Plaintiff's Rule 59(e) Motion

"We generally review a denial of a motion to alter or amend the judgment under Rule 59(e) for abuse of discretion." *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007) (quoting *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 554 (6th Cir. 1998)). However, if the district court's denial of a Rule 59(e) motion is based on erroneous legal doctrine, then this Court employs a *de novo* standard of review. *Id.* In the present case, the district court did not base its denial of Plaintiff's Rule 59(e) motion on an erroneous legal doctrine such that *de novo* review would apply, and Plaintiff concedes on appeal that this Court should review the district court's decision for abuse of discretion.

"In this circuit, a district court may alter a judgment under Rule 59 based on (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a

---

[3] In the district court and on appeal, Defendant further argues that Plaintiff's express warranty claim should be dismissed because Plaintiff failed to plausibly allege that Defendant made any affirmations of fact beyond mere puffery. Navistar also argues that Plaintiff failed to plausibly allege facts from which the district court could infer causation and damages for each of his warranty claims. The district court declined to reach the merits of Defendant's causation and damages arguments because of other grounds for granting Navistar's motion to dismiss. Because we find that Plaintiff's claims were insufficiently pled with regards to notice, we likewise do not address these issues.

need to prevent manifest injustice." *Nolfi v. Ohio Kentucky Oil Corp.*, 675 F.3d 538, 551–52 (6th Cir. 2012) (citing *Leisure Caviar, LLC v. United States Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010)). This standard vests "considerable discretion" in the district court. *Leisure Caviar*, 616 F.3d at 615. When deciding whether to grant a Rule 59(e) motion, a district court must consider the "interest of protecting the finality of judgments and the expeditious termination of litigation." *Id.* at 615–16 (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)). Otherwise, "plaintiffs could use the court as a sounding board to discover holes in their arguments, then 'reopen the case by amending their complaint to take account of the court's decision.'" *Id.* at 616 (quoting *James v. Watt*, 716 F.2d 71, 78 (1st Cir. 1983)). Therefore, unlike in the context of Federal Rule of Civil Procedure 15(a), "[a] claimant who seeks to amend a complaint *after* losing the case must provide a compelling explanation to the district court for granting the motion." *Id.* at 617. With this standard in mind, we find that the district court did not abuse its discretion by denying Plaintiff's Rule 59(e) motion to alter or amend the judgment. We address two preliminary issues.

First, Plaintiff moved to alter the district court's judgment only as to his second TCPA claim, which was originally pleaded in Paragraph 45(b) of his complaint. Accordingly, the district court limited its analysis to whether it should alter its dismissal of Plaintiff's second TCPA claim only. On appeal, Plaintiff does not challenge the district court's interpretation of his Rule 59(e) motion as applying only to his second TCPA claim. Therefore, we confine our review of Plaintiff's Rule 59(e) motion to his second TCPA claim as well.

Next, Plaintiff appears to argue that this Court should remand to the district court to provide Plaintiff an opportunity to amend his TCPA claim pursuant to Federal Rule of Civil Procedure

15(a)(2), regardless of this Court's review of Plaintiff's Rule 59(e) motion. This argument is without merit. First, Plaintiff's counsel acknowledges in his brief that "[i]t is undisputed that the Plaintiff's Complaint, as written, may not contain sufficient allegations to state a plausible claim for relief as to the *service-related* cause of action presented in Paragraph 45(b). An amendment would be required to survive the Defendant's Motion to Dismiss as it relates to this cause of action." Br. for Appellant at 37. Plaintiff then proceeds to argue why such an amendment should be allowed under Federal Rule of Civil Procedure 15(a)(2), arguing in particular that there would be no undue delay or undue prejudice to Defendant.

Plaintiff's argument misses the mark because Plaintiff never filed a motion to amend his complaint either as of right or with leave of court in the district court. In his response in opposition to Defendant's motion to dismiss, Plaintiff stated "[a]s it pertains to the Plaintiff's allegations contained in Paragraph 45(b) of the Complaint, Plaintiff will be filing a Motion to Amend pursuant to Federal Rule of Procedure 15(a)(2) for the purpose of pleading, with sufficient particularity, Defendant's violation of the Tennessee Consumer Protection Act as set forth in Paragraph 45(b) of the Complaint." R. 12, Pg. ID 169. In the same response, Plaintiff requested that "as it pertains to the allegations set forth in Paragraph 45(b), Plaintiff be permitted to Amend the Complaint *upon proper motion* pursuant to Federal Rule of Civil Procedure 15(a)(2)." *Id.* (emphasis added). But, Plaintiff never filed a proper motion to amend his complaint, and this Court has repeatedly held that "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Emps.' Ret. Sys.*, 622 F.3d at 486 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004), *abrogated on other grounds*, *Frank v. Dana*

*Corp.*, 646 F.3d 954, 961 (6th Cir. 2011)). For example, in *Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014), we found that "[b]oth because the plaintiffs did not present an adequate motion and because they did not attach a copy of their amended complaint, the district court did not abuse its discretion in refusing to allow the plaintiffs to amend their complaint based on the final sentence of the plaintiffs' memorandum in opposition." Therefore, the district court did not abuse its discretion in this case by failing to rule on a motion that was never before it. To the extent that we consider remanding the case to provide Plaintiff with an opportunity to amend his second TCPA claim, we do so by reviewing the district court's denial of Plaintiff's Rule 59(e) motion only, rather than on any alleged failure of the district court to grant leave to amend under Rule 15. For the reasons that follow, we find that the district court did not abuse its discretion by denying Plaintiff's Rule 59(e) motion.

In his Rule 59(e) motion, Plaintiff sought to reopen the district court's judgment on his TCPA claim because of Plaintiff's counsel's mistaken impression "that a case management conference was required prior to filing his motion to amend." R. 31, Pg. ID 242. Plaintiff argued that Plaintiff's counsel misunderstood when he was able to seek leave to amend the complaint under the Local Rules and the Federal Rules of Civil Procedure. The district court correctly found that Plaintiff's counsel's misunderstanding of the procedural rules did not satisfy any of the requisite conditions for granting a Rule 59(e) motion. The court stated:

> Plaintiff's argument is nonsensical. The Federal Rules of Civil of Procedure do not state that a party must wait to seek leave to amend a complaint until an initial case management conference. In fact, they allow just the opposite. Under Rule 15(a)(1)(B), a party may amend its pleading "as a matter of course if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Therefore, Plaintiff did not even need to seek leave but instead could have directly responded to Defendant's motion to dismiss with an

17

amended complaint. In addition, under Rule 15(a)(2), a party can amend its pleading with the opposing party's written consent or the court's leave. Rule 15(a)(2) does not say that a party must wait until after an initial case management conference to move for such relief. Nothing in the Local Rules impairs Plaintiff's right to amend his complaint or seek leave to do so before the initial case management conference. Nor could it. "[L]ocal rules may not displace the Federal Rules of Civil Procedure." *Wilson v. City of Zanesville*, 954 F.2d 349, 352 (6th Cir. 1992).

R. 35, Pg. ID 261–62. The district court concluded that "[b]ecause Plaintiff—through a proper understanding of the Federal Rules of Civil Procedure—could have easily avoided the outcome in this case . . . a manifest injustice has not occurred." *Id.* at Pg. ID 262.

We agree with the district court. Trial counsel's misunderstanding of the Federal Rules is not the type of "manifest injustice" at which Rule 59(e) is directed. This Court has repeatedly held that trial counsel's strategic mistakes do not justify reopening a judgment. *See, e.g.*, *Michigan Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017); *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *see also Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) ("[M]anifest injustice 'does not exist where . . . a party could have easily avoided the outcome, but instead elected not to act until after a final order had been entered.'") (citation omitted). These holdings appropriately apply to counsel's misunderstanding of the Federal Rules where the language of the Rules was plain. *See* Fed. R. Civ. P. 15(a)(1) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (e), or (f) . . . ."). Therefore, we hold that the district court did not abuse its discretion by denying Plaintiff's Rule 59(e) motion to alter or amend the judgment on his TCPA claim based on his trial counsel's misunderstanding of the Federal Rules.

## IV. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's judgment granting Defendant's motion to dismiss, and **AFFIRM** the district court's order denying Plaintiff's Rule 59(e) motion to alter or amend the judgment as to his TCPA claim.